62247.09/100UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE PATHOLOGY LABORATORY, INC. :<br>　Plaintiff | CIVIL ACTION NO.: 2:21-cv-01558 |
| VERSUS　　　　　　　　　　　　　　: | JUDGE: JAMES D CAIN, JR. |
| MT. HAWLEY INSURANCE COMPANY :<br>　Defendant | MAGISTRATE JUDGE KAY |

**FIRST SUPPLEMENTAL, AMENDED,
AND RESTATED COMPLAINT**

**NOW INTO COURT,** through undersigned counsel, comes The Pathology Laboratory, Inc., ("The Path Lab"), a Louisiana corporation domiciled and with its principal place of business in Lake Charles, Louisiana, which brings this First Supplemental, Amended, and Restated Complaint as a matter of course in accordance with Rule 15(a)(1)(B) within twenty-one (21) days after service of Defendant Mt. Hawley Insurance Company's Rule 12(b) Motion to Dismiss (Doc. No. 10), and alleges as follows:

1.

Made defendant herein is Mt. Hawley Insurance Company ("Mt. Hawley") an Illinois insurance company domiciled and with its principal place of business in Illinois, which can be served and has been served through its agent for service of process, Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

2.

Mt. Hawley issued to The Path Lab Commercial Property Policy No. MCP 0170771 (Doc. No. 10-2, incorporated by reference) with a policy period from May 12, 2020 to May 12, 2021

(the "Policy") insuring The Path Lab's premises at 830 W. Bayou Pines Drive, Lake Charles, Louisiana 70601 (the "Premises") from which The Path Lab conducts business.

3.

The Mt. Hawley Policy insured The Path Lab premises for "Special" Causes of Loss and, specifically for "Business Income (and Extra Expense)."

4.

The Premises is located in the metropolitan area within the city limits of Lake Charles, Louisiana.

5.

The Path Lab's loss occurred and its damages were sustained in the City of Lake Charles, Calcasieu Parish.

6.

The Path Lab's business consists of clinical pathology (e.g. blood chemistries, urine chemistries, microbiology) and office-based and hospital-based anatomical pathology. The Path Lab clients consist of in-person visits and office-based and hospital-based anatomical pathology referrals (collectively, the "Clients").

7.

The Business Income Coverage in the Policy obligated Mt. Hawley to pay for The Path Lab's loss of business income resulting from a suspension of its operations during the period when access to the area immediately surrounding the Premises was prohibited by civil authority taken in response to dangerous physical conditions, all as more specifically specified in the Policy and, to the extent not specified in the Policy, in accordance with The Path Lab's reasonable expectations as to coverage.

2605445v.1

8.

Hurricane Laura was a weather-related event involving wind and was assigned that formal name by the National Hurricane Center.

9.

Hurricane Laura was a named storm.

10.

Hurricane Laura was an insured peril insured against under the Mt. Hawley Policy.

11.

As a tropical storm, Laura dumped nearly a foot of rain on the Dominican Republic causing serious flash flooding, severe damage was also sustained in Haiti, Puerto Rico and Cuba. Twenty-three persons died there as a result of Tropical Storm Laura.

12.

On August 25, 2020, Laura entered the Gulf of Mexico and became a Category 1 hurricane. On August 26, 2020, Laura began to explosively intensify, reaching a Category 2 by 1 a.m., Category 3 by 7 a.m., and Category 4 by 1 p.m.

13.

On August 27, 2020, Hurricane Laura made landfall and devastated Lake Charles, Louisiana. Property, other than the Premises, but within a mile of the Premises, was severely damaged by Hurricane Laura, as was most of the City.

2605445v.1

14.

The eye and eyewall of Laura passed over the entire Lake Charles metropolitan area as a Category 4 hurricane. Wind damage to buildings and trees throughout the City was catastrophic. All seven electrical transmission line corridors feeding Lake Charles were catastrophically damaged causing an extensive power outage.

15.

On August 23, 2020, President Donald Trump signed a Disaster Declaration for Louisiana before Hurricane Laura made landfall.

16.

As a result of Hurricane Laura, and the Parish issued Executive Orders 2020-01 through 2020-07 and the Mayor of Lake Charles issued relevant Executive Orders 2020-01 through 2020-07.

17.

The orders prohibiting access to The Path Lab Premises include Parish Executive Orders 2020-01 through 2020-06, City Orders 2020-01 through 2020-07 and President Trump's Disaster Declaration (hereinafter collectively referred to as "Orders"), which are incorporated herein by reference. Some of the Orders appear in the record as Docs. 10-3 and 10-4.

18.

The Orders were issued by the respective governmental authorities after they watched Hurricane Laura progress and because of damage resulting and anticipated therefrom and the fact that the parish and city were in its predicted path. The predicted course of Hurricane Laura and the damage it caused were accurate.

2605445v.1

19.

The Orders were issued because Laura had been causing damage in its path and was forecast to strike and extensively damage and did strike and extensively damage Southwest Louisiana, including Calcasieu Parish and Lake Charles.

20.

The Orders were issued by the respective civil authorities both in anticipation of and as a result of damage and dangerous physical conditions expected from and actually resulting from Hurricane Laura and the continuation thereof.

21.

The National Hurricane Center (NHC) forecasts regarding Laura's path were deemed extraordinarily accurate. Plymouth State meteorology Associate Professor Jason Cordeira noted that the NHC forecast on August 23, 2020, 3 to 4 days before landfall, pinpointed the ultimate landfall of Laura's center within less than a mile.

22.

The Orders were continuing in nature.

23.

The Orders were caused by and cite as their inducement direct physical loss of and damage to property caused by Hurricane Laura other than at The Path Lab Premises, but including areas within a mile thereof.

24.

Parish Order 2020-01 issued August 25, 2020 cited the immediate need to "respond to damages associated with Hurricane Laura" and issued a "mandatory evacuation for the Parish of

Calcasieu effective immediately." The evacuation order was continuing and was not lifted until Parish Order 2020-06 on September 11, 2020.

25.

City of Lake Charles Order 2020-06 issued September 4, 2020 cited the "effects of a Category 4 Hurricane Laura which devastated the City." It cited "extensive physical damage to all areas of the City" and went on to require businesses to "remain closed until they have electricity, water and sewer service and are otherwise safe to occupy." That order was continuing, being extended by Order 2020-07 until September 21, 2020.

26.

By virtue of the Orders, access to the area immediately surrounding the property damaged by Hurricane Laura was prohibited because of such damage. The Premises is within the area surrounding such damaged property and not more than one mile from the damaged property.

27.

The above-described action by civil authorities (i.e. the Orders) was taken in response to dangerous physical conditions anticipated to result from and actually resulting from the above-described hurricane and the continuation of the hurricane damages, which were continuing.

28.

The Orders were issued because of hurricane damage to property other than to the insured Premises.

29.

The Orders prohibited access to The Path Lab Premises and to the area immediately surrounding The Path Lab Premises because of physical damage to property in that area (i.e.

including within a mile of the Premises) that was accurately predicted to occur and resulted from Hurricane Laura.

30.

Most, if not all of The Path Lab employees and physicians complied with the Parish evacuation orders.

31.

Approximately 80% of The Path Lab employees and four of six of its physicians evacuated in whole or in part because of the Orders.

32.

Black's Law Dictionary defines "prohibit" as "1. To forbid by law. 2. To prevent, preclude, or **severely hinder**." (emphasis added).

33.

The Path Lab Premises only suffered the loss of a few shingles. It was not damaged such that it would have had to restrict its operations but for the Orders. The Path Lab complied with the Orders and closed its business from August 27, 2020 to September 8, 2020.

34.

As a direct result of the above civil authority actions (i.e., the Orders) specified above, access to the Premises was prohibited and the "operations" of The Path Lab, as defined in the Policy, were suspended. No in-person clients were allowed in the Premises.

35.

During the period of business closure, a few physicians accessed the Premises sporadically to perform anatomical pathology services on an exigent medical necessity basis.

36.

During the period of business closure, a few employees accessed the Premises to help perform anatomical pathology services on an exigent medical necessity basis, to assess electrical and water problems, and to begin the recovery process.

37.

The Path Lab complied with Orders except to the limited extent necessary to respond to medical exigencies.

38.

The Path Lab performs pathology services for in-person clients who present themselves in the lobby of the Premises, and are taken to various areas of the Premises to collect samples and specimens. It also performs pathology services for hospitals, clinics, and physicians who deliver samples and specimens to the Premises. Many of these clients reside and/or have their place of business within a mile of the Premises and were unable to access both their businesses and residences and the Premises because of the Orders. The Path Lab's business dependent on the physical presence of clients at the Premises ceased during the period of closure. Other business was greatly restricted and on an exigent medical basis.

39.

During the period of closure of The Path Lab business and the Premises, the business and the Premises had undependable water service and undependable electrical service through a generator. Parish Order 2020-03 issued August 31, 2020, stated that Hurricane Laura damaged several water systems leaving customers without adequate water service. The lack of electricity

2605445v.1

and potable water suffered by the area immediately surrounding The Path Lab was due to damage other than at the Premises (i.e. City infrastructure damage).

40.

The Path Lab remained closed because of the Orders from August 27, 2020 until September 8, 2020, when it was deemed safe to occupy the Premises.

41.

At all times relevant hereto, The Path Lab had clients, both individual and institutional, that resided and/or had their place of business within one mile of the Premises and, similarly, were prohibited from accessing their places of business and the Premises and were thereby prohibited from otherwise providing business to The Path Lab, all because of the Orders. The Orders both prohibited and caused The Path Lab to deny its clients access to the Premises.

42.

The Orders resulted in an interruption of The Path Lab's business operations and a corresponding loss of business income (i.e., profit and continuing normal operating expenses).

43.

On information and belief, a majority of The Path Lab clients evacuated and closed their business, in whole or in part, because of the Orders. On information and belief, The Path Lab clients complied with the Orders and did not attempt to access the Premises as it remained closed.

44.

Had the Premises been open and accessible to clients, employees, and physicians, the loss of Business Income suffered by The Path Lab would not be as great as it was.

45.

The loss of business income suffered by The Path Lab was caused by the Orders, which were the actions of civil authorities.

46.

The loss of business income suffered by The Path Lab was caused by the lack of access to the insured Premises caused by the Orders.

47.

As a direct result of the above Suspension of Operations of The Path Lab incurred loss of Business Income and Extra Expenses during the period during which access to the Premises was prohibited by civil authority.

48.

As a direct result of its loss of Business Income and Extra Expense, The Path Lab made a claim with Mt. Hawley.

49.

In response to The Path Lab's claim, Mt. Hawley denied coverage. Mt. Hawley sent a coverage declination letter dated November 16, 2020.

50.

Mt. Hawley's coverage declination letter stated, in part:

> "The Additional Coverage for Civil Authority does not apply because this order was implemented as a preventative measure in an attempt to minimize the potential risk of damage to life and property, and not in response to a Covered Cause of Loss causing damage to property other than at your premises. Since the action of Civil Authority was not taken because of damage to other property, it did not prohibit access to your premises as a result of damage to property from a Covered Cause of Loss within one mile of your premises, in addition to other applicable reasons."

2605445v.1

51.

However, Mt. Hawley's declination letter referenced Parish Order 2020-01 and failed to mention City Order 2020-06.

52.

The Path Lab provided City Order 2020-06 (Doc. No. 10-4 p. 6 of 9) to Mt. Hawley (along with other Executive Orders) on November 17, 2020.

53.

Mt. Hawley breached the Civil Authority provision of the Business Income (and Extra Expense) Coverage Form of its Policy.

54.

In furtherance of its claim, and despite the denial of coverage by Mt. Hawley, The Path Lab submitted a satisfactory proof of loss to Mt. Hawley on or about February 25, 2021 in the amount of $426,462.07.

55.

Having been provided an unequivocal denial of coverage in November, 2020, The Path Lab was under no duty to provide further documentation or proof of loss to Mt. Hawley.

56.

More than thirty (30) days have elapsed since The Path Lab submitted its proof of loss to Mt. Hawley and Mt. Hawley has failed to pay or offer to pay the undisputed amount of the insurance proceeds and failed to make an offer to settle The Path Lab's loss of Business Income claim.

57.

In the event the Policy does not afford coverage to The Path Lab outright, then, in the alternative, the Policy is ambiguous in that it (i) fails to define "prohibit" which, by definition, need not be absolute; (ii) fails to specify whose "access" is determinative; (iii) expressly insures loss of reduced Business Income which implies less than absolute prohibition of access; (iv) requires The Path Lab to use its undamaged property at the Premises to resume its operations as quickly as possible; and (v) was deemed by Mt. Hawley to afford coverage.

58.

This ambiguity is evidenced by the Policy language itself, particularly Business Income Sections A(5)(a), C(3)(a)(2), and C(3)(c)(1); and by the acts of Mt. Hawley detailed in paragraphs 62 and 63, below.

59.

These ambiguities must be construed against Mt. Hawley, and in favor of coverage, in that it drafted the Policy, and it acted in a manner inconsistent therewith, as specified in paragraphs 62 and 63, below.

60.

By reducing its claim for failure to do so, the Policy required The Path Lab to resume its operations using its undamaged property, at its Premises.  The Path Lab resumed its operations as soon as it was reasonably able in response to that Policy requirement.

61.

A reasonable policy purchaser (such as The Path Lab) at the time the Mt. Hawley Policy was effected would construe the Business Income Coverage provision as providing coverage if clients of the insured business, as well as its employees and physicians, were denied access thereto

2605445v.1

because its business closed and its operations suspended and its clients closed or were otherwise denied access (i) to its business and Premises and (ii) to their own respective homes and businesses as a result of continuing, mandatory evacuation orders and continuing, business closure orders identical to the Orders.  The Path Lab was reasonable in such expectation.

62.

Mt. Hawley originally denied coverage citing many of the same arguments cited in its Motion to Dismiss (Doc. No. 10).  After being confronted with the City Order 2020-06 by The Path Lab, and because of such Order, Mt. Hawley conceded that ". . . based upon our review of the orders provided to us it appeared that a timeframe of September 4 – 8 seems to apply for your civil authority coverage . . ."  After this lawsuit was filed and served, Mt. Hawley requested The Path Lab to provide it with the financial information necessary to determine the loss and pay the claim.  The same Mt. Hawley adjuster made the initial coverage denial based on the evacuation orders, conceded that there was coverage after being presented with the business closure orders, and sought financial records after this suit was served with which to calculate and pay the claim.

63.

After receiving City Order 2020-06, Mt. Hawley conceded that it owed Civil Authority coverage to The Path Lab in an email dated February 25, 2021.  Mt. Hawley conceded that it owed The Path Lab one day's loss.  Mt. Hawley's position was based on information that is public record and which Mt. Hawley has had since being furnished to it by The Path Lab on approximately November 17, 2020.  Further, as late as June 7, 2021, after this suit was filed and served, Mt. Hawley sought financial information from The Path Lab with which to calculate the latter's business income loss and pay its claim.  These actions of Mt. Hawley are inconsistent with Mt.

13

Hawley's contention that its Policy is not ambiguous and consistent with the reasonable expectations of The Path Lab and any other reasonable policy purchaser.

64.

However, Mt. Hawley has failed to tender any amount to The Path Lab as required by the Policy and Louisiana law.

65.

Mt. Hawley breached its Policy and, particularly its obligation to indemnify The Path Lab for its insured losses and is, therefore, liable for an amount equal to such losses.

66.

Under Louisiana Revised Statutes 22:1982 and 1973, Mt. Hawley owes The Path Lab a duty of good faith and fair dealing and has an affirmative duty to adjust claims fairly and properly and to make a reasonable effort to settle claims. Because of Mt. Hawley's failure to do so, in addition to compensatory damages, The Path Lab is entitled to penalties and attorney's fees from Mt. Hawley. Under these statutes, Mt. Hawley's (i) misrepresenting pertinent facts or insurance policy provisions relating to any coverage at issue (i.e. not disclosing City Order 2020-06 and stating originally that there was no coverage), or (ii) failing to pay the amount of The Path Lab's claim due under the Policy within the prescribed number of days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause, are *per se* violations of that duty of good faith and fair dealing and give rise to the right of The Path Lab to recover the penalty damages and attorney's fees provided by those statutes.

67.

Mt. Hawley is liable to The Path Lab under R.S. 22:1973 for two time the amount of those compensatory damages for breaching its duty of good faith and fair dealing, and for breaching its

affirmative duty to adjust claims fairly and properly, and for acting arbitrary, capricious, and without probably cause in denying coverage and/or for misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue, all as specified above.

68.

In addition or, the alternative, Mt. Hawley is liable to The Path Lab under R.S. 22:1892 for its damages plus 50% of that amount for acting arbitrary, capricious, or without probable cause in denying coverage. Under Louisiana Revised Statute 22:1892, Mt. Hawley was required to pay the amount of any claim due The Path Lab within 30 days after receipt of satisfactory proof of loss of its claim and make a written offer to settle within that same period. Mt. Hawley's failure to make such payment within 30 days, arbitrary, capricious, and without probable cause, subjecting Mt. Hawley to a penalty, in addition to the amount of The Path Lab's loss, of 50% of the damages for the amount found to be due.

69.

Further, by citing an inapplicable Executive Order in its declination letter, in failing to accept coverage for more than 30 days after its error was called to its attention, and by conceding that, under the Executive Order it has had since approximately November 17, 2020, it owes at least one day's loss but refusing to tender that, undisputed amount, Mt. Hawley has acted arbitrarily, capriciously, and in bad faith.

70.

The Path Lab has suffered as damages its loss of Business Income and Extra Expenses as defined in the Policy.

2605445v.1

71.

The Path Lab has been required to engage counsel to pursue the above-referenced matter and to engage an accountant to calculate its loss, for all of which Mt. Hawley is also responsible.

72.

Pursuant to Civil Code art. 1861, The Path Lab will accept the undisputed portion due it under the Policy, while reserving all rights.

WHEREFORE, plaintiff, The Pathology Laboratory, Inc., prays for judgment in its favor and against Mt. Hawley Insurance Company (i) for all damages reasonable in the premises, (ii) for penalties under R.S. 22:1892 and R.S. 22:1973, (iii) for reasonable attorney's fees and costs incurred in this proceeding, (iv) for interest (pre-judgment and post-judgment) to the extent allowed by law, and (v) for all other just and equitable relief for which they are entitled.

> Respectfully submitted,
> **TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.**
>
> BY: /s/Merrick J. "Rick" Norman, Jr.
> MERRICK J. "RICK" NORMAN, JR., #10044
> JUDSON M. NORMAN, #37822
> 145 East Street
> Lake Charles, LA 70601
> Telephone: (337) 436-7787
> Facsimile: (337) 436-7758
> Rick.Norman@taylorporter.com
>
> and
>
> Amy C. Lambert, #24348
> William H. Patrick, IV, #38862
> 450 Laurel Street, Suite 800
> Baton Rouge, LA 70801
> Telephone: (225) 387-3221
> Facsimile: (225) 346-8049

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing has been electronically filed using the Court's CM-ECF system, which will send notice to all counsel of record.

Lake Charles, Louisiana, this 8th day of July, 2021.

          /s/Merrick J. "Rick" Norman, Jr.
          MERRICK J. "RICK" NORMAN, JR.