UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **PATHOLOGY LABORATORY INC** | **CASE NO. 2:21-CV-01558** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MT HAWLEY INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Defendant Mt. Hawley Insurance Company's Motion to Dismiss" (Doc. 10) wherein Mt. Hawley moves to dismiss Plaintiff the Pathology Laboratory, Inc.'s (the "Lab") claim for lost business income. Mt. Hawley maintains that the Lab cannot establish that access was prohibited to the described premises.

## ALLEGATIONS

Mt. Hawley issued the Lab a policy of insurance from May 12, 2020 to May 12, 2021 for the Lab's facility in Lake Charles, Louisiana.[1] The Policy afforded coverage for loss of Business Income (and Extra Expense).[2] On August 27, 2020, Hurricane Laura devastated Lake Charles, Louisiana causing severe damage to the insured property as well as other properties within a mile of the insured property.[3] All seven electrical transmission line corridors feeding Lake Charles were catastrophically damaged causing an extensive power outage.[4]

As a result of Hurricane Laura, the Parish issued Executive Orders 2020-01 – 2020-07 and the Mayor of Lake Charles issued relevant City Orders 2020-01 – 2020-07. The Lab maintains that Parish Orders 2020-01 – 2020-06, City Orders 2020-01 – 2020-07 and President

---

[1] First Supplemental, Amended, and Restated Complaint, ¶ 2, Doc. 13.
[2] Id. ¶ 3.
[3] Id. ¶¶ 13 and 14.
[4] Id. ¶ 14.

Trump's Disaster Declaration (hereinafter collectively referred to as the "Orders") prohibited access to the Lab.[5] The Orders were issued by the respective government authorities as they watched Hurricane Laura progress; the authorities anticipated severe damage considering that Lake Charles and the surrounding areas were in the Hurricane's predicted path. The predicted course of Hurricane Laura and the damage it caused were accurate.[6] The Orders were issued by the respective civil authorities both in anticipation of and as a result of damage and dangerous physical conditions expected from and actually resulting from Hurricane Laura and the continuation thereof.[7] The Orders were caused by and cite as their inducement direct physical loss of and damage to property caused by Hurricane Laura other than at the Lab premises, but including areas within a mile thereof.[8]

On August 25, 2020, the Calcasieu Parish Police Jury issued a Mandatory Evacuation Order ("Evacuation Order"). On August 27, 2020, Hurricane Laura made landfall as a Category 4 Hurricane devastating Lake Charles, Louisiana and the surrounding area. All businesses that were not essential to the recovery effort were ordered by the City of Lake Charles to remain closed until electricity, water and sewer services were restored (referred to as "Business Closure Orders").[9] The City Orders/Business Closure Orders were issued September 4, 2020 and extended on September 11, 2020.[10] The Evacuation Order was lifted on September 11, 2020.[11] As a result of the Orders, the Lab was closed from August 27, 2020, to September 8, 2020.[12]

---

[5] Id. ¶ 17.
[6] Id. ¶ 18.
[7] Id. ¶ 20.
[8] Id. 23.
[9] Docs. 10-3, 10-4.
[10] Restated Complaint, ¶ 25; Defendant's exhibit 3, Doc. 10-4, p. 8.
[11] Restated Complaint ¶ 24; doc. 10-3, p.2.
[12] Restated Complaint, ¶ 40.

## **RULE 12(b)(6) STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence

on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

**LAW AND ANALYSIS**

The Lab alleges that access to the Property was "restricted" and Plaintiff's operations were "suspended" as a direct result of the Civil Authority actions which caused loss of business income and extra expenses. The Lab filed a claim with Mt. Hawley for its loss of business income and extra expense; even though Mt. Hawley initially accepted the claim as covered, it later denied coverage by letter dated November 16, 2020.[13]

---

[13] Id. ¶¶ 18019.

Mt. Hawley maintains that the Orders relied upon by the Lab (September 4, 2020 Business Closure Order, and the August 25, 2020 mandatory Evacuation Order) do not trigger coverage under the Policy's Civil Authority provision. Mt. Hawley argues that the Orders do not by their explicit terms close the Lab's business because closure was entirely dependent on the condition of the described premises itself and whether it was safe to occupy. Mt. Hawley further argues the that the mandatory Evacuation Order was issued in anticipation of property damage and therefore did not trigger coverage under the Policy's Civil Authority provision. Finally, Mt. Hawley argues that the Orders did not "completely prohibit" access to the Lab's property as is required to invoke coverage.

The Policy's **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM** includes the following relevant provisions:[14]

    **A. Coverage**

    . . .

        **5. Additional coverages**

            **a. Civil Authority**

> In this Additional Coverage—Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a covered Cause of Loss causes damages to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the

---

[14] Defendant's exhibit 1-2.

> damage, and the described premises are within the area but are not more than one mile from the damaged property; and
> 
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
> 
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.
> 
> Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:
> 
>> **(1)** Four consecutive weeks after the date of that action; or
>> **(2)** When your Civil Authority coverage for Business Income ends;
> 
> Whichever is later.[15]

Insurance policies are interpreted as a matter of law and governed by the same rules of construction applicable to contracts generally. *First Am. Bank v. First Am. Transp. Title Ins. Co.,* 585 F.3d 833, 837 (5th Cir. 2009) (citing *Bonin v. Westport Ins. Corp.,* 930 So.2d 906, 910 (La. 2006)); see also *Celebration Church, Inc. v. United Nat'l Ins. Co.,* 153 F.Supp.3d 924, 937-38 (E.D. La. 2015). "[I]t is the burden of the insured to prove the incident falls within the policy's terms," and "the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.,* 774 So.2d 119, 124 (La. 12/19/00).

---

[15] Defendant's exhibit 1-1, p. 25, Doc. 10-2.

The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Louisiana Civil Code article 2045. *Reynolds v. Select Properties, Ltd.,* 634 so.2d 1180 (La. 8/11/94); *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.,* 630 so.2d 759, 763 (La. 1/14/94). An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Id.* If, after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.[16]

"An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions." *Sims v. Mulhearn Funeral Home, Inc.,* 956 So.2d 583, 589 (la. 5/22/07). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." Louisiana Civil Code article 2053. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." Louisiana Civil Code article 2056.

"Ambiguous policy provisions are to be construed against the confector, the insurer. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Breland v. Schilling,* 550 So.2d 609, 610-11 (La. 1989).

"The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract by construing words and phrases using their plain, ordinary

---

[16] *Consolidated Companies, Inc., v. Lexington Ins. Co.,* 616 F.3d 422 (5th Cir. 2010).

and generally prevailing meaning." *Wisznia Co. Inc. v. Gen. Star Indem. Co.,* 759 F.3d 446, 448-49 (5th Cir. 2014) (citing Louisiana Civil Code articles 2045, 2047). If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Succession of Fannaly v. Lafayette Ins. Co.,* 805 So.2d 1134, 1137 (La. 1/15/02). Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson v. Schimek,* 729 So.2d 1024, 1029 (La. 1999).

Federal courts applying Louisiana law to interpret civil authority provisions in insurance policies have required insureds to plead and prove the following relating to a claim for loss of business income:

> (1) [the loss was] caused by an action of civil authority; (2) the action of civil authority must prohibit access to the described premises of the insured; (3) the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and (4) the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.

*Dickie Brennan & Co., Inc. v. Lexington Ins. Co.,* 636 F.3d 683, 685 (5th Cir. 2011).

*Damage to other property*

Mt. Hawley maintains that the Orders did not trigger coverage because the property was not ordered to close in response to damage to other property. The September 4, 2020 Order stated in relevant part that:

> IT IS ORDERED that, because of the extensive physical damage to all areas of the City of Lake Charles and lack of electricity and potable water, all businesses that are not essential to the recovery effort should remain closed until they have electricity, water and sewer services and are otherwise safe to occupy.

Mt. Hawley argues that this order required the Lab's closure because of its own damage, and not damage to other property. The Court disagrees. The Business Closure Order expressly predicates the closure of businesses "because of the ***extensive physical damage to all areas of the City of Lake Charles***…" There is no doubt here that the Order was the result of extensive damage caused by Hurricane Laura to property other than the Lab.

*August 25, 2020 Police Jury Evacuation Order*

Mt. Hawley maintains that because the Evacuation Order was only "in anticipation" of damages as a result of the storm, and not in response to damage, the Civil Authority provision is not triggered. Under Louisiana law, federal courts require a "direct nexus between damages sustained and the order that the policy requires. . . ." *Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, LLP v. Chupp Corp.,* 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2020); *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.,* 636 F.3d 683 (5th Cir. 2011).

As noted by the Lab, "Civil Authority" is not defined in the Policy. The Lab argues that there is no Policy language that would suggest that Civil Authority is to be parsed by isolating each governmental subdivision or by examining each order individually or out of context. The Lab submits that in addition to the continuing mandatory Evacuation Order, the civil authorities issued the Presidential Disaster Declaration and a continuing, mandatory Business Closure Order based on "extensive physical damage to all areas of the City."[17] The Lab relies on *Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP v. National Fire Ins. Co. of Hartford,* 2007 WL 2489711 (M.D. La. 20017), wherein the court discussed civil authority coverage as follows:

---

[17] Opposition, p. 10, Doc. 14.

> . . . [c]ourts have held that access to an insured premises is 'prohibited' where the order or action of civil authority actually requires the insured's business premises to close, thereby invoking coverage for business losses. *See, Assurance Co. of Am. V. BBB Serv. Co.*, 265 Ga.App 35,593 S.Ed.2d 7, 7-9 (2003) (County order to evacuate as Hurricane Floyd approached required closure of plaintiff's restaurant, and coverage therefore exited under Civil Authority Clause); *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.,* 2002 WL 31247972 at *4 (E.D. Pa. 2002) (Order of town authorities directed plaintiff to suspend plant operations due to Hurricane Floyd); *Southlanes Bowl, Inc v. Lumbermen's Mut. Ins. Co.,* 46 Mich.App. 758 208 N.W.2d 569, 570 (1973) (governor mandated closure of all places of amusement, including plaintiff's bowling alleys, restaurants, taverns and motels, due to rioting after assassination of Dr. Martin Luther King, Jr.); *Altru Health System v. American Protection Ins. Co.,* 238 f.3d 961 (8th Cir. 2001) (Claim for business interruption was covered (although limited by the policy's flood submit) where the state health department ordered hospitals to evacuate and close during a flood when the city's water supply failed)."

*Kean, Miller,* 2007 WL 2489711 at *6. The Lab argues that as a result of these continuing Orders, the Lab was closed and inaccessible to both employees and clients, resulting in loss of Business Income and triggering Civil Authority coverage.

The Court agrees that the first August 25, 2020 mandatory evacuation order did not immediately trigger the Civil Authority coverage because when ordered, there was no damage to other property. The Court agrees that the mandatory Evacuation Order was in "anticipation;" however, that "anticipation" became a reality. The Court finds that the Civil Authority coverage was triggered when Hurricane Laura struck Louisiana on August 27, 2020, causing severe damage to the City of Lake Charles and the surrounding area. Significantly, the Evacuation Order was mandatory and continuing.

The September 4, 2020 Business Closure Order specifically and clearly expressed that the Order was being issued due to "extensive physical damage to all areas of the City of Lake

Charles.[18]   Paragraph **5.a.** provides that coverage is triggered when "access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property . . ."The Court also finds that the Orders which required businesses within the area to close because of the severe damage triggered the Civil Authority coverage which resulted in a loss of Business Income and Extra Expense to the Lab.

*Prohibited access*

Mt. Hawley maintains that the Lab's Petition fails to allege that the action of Civil Authority failed to completely prohibit access to the described premises. Mt. Hawley relies on a variety of cases which held that the civil authority must completely prohibit access; *Kean, Miller,* 2007 WL 2489711 (a recommendation to evacuate was issued by the governor and other authorities asked and encouraged residents to stay off the street prior to Hurricane Katrina coming ashore)*; Commstop v Travelers Indem. Co. of Conn.,* 2012 WL 1883461 (W.D. La. May 17, 2012) (access must be completely prohibited; road renewal program did not completely prohibit access to the insured's premise, nor was there an order of civil authority which specifically prohibited access to its premises or a showing that access to the business premises was completely blocked.); *730 Bienville Partners Ltd. v. Assurance Co. of America,* 2002 WL 31996014 (E.D. La. 2002) (after the Federal Aviation Administration closed all United States' airports due to the September 11, 2001 terrorist attacks, the court concluded there was no coverage under the "Civil Authority" provision because closing only the airports did not completely prohibit access to hotels).

---

[18] Defendant's exhibit 3.

Mt. Hawley argues that the terms "should" and "remain" in the September 4, 2020 Business Closure Order is insufficient to prohibit access to the premises and therefore insufficient to trigger coverage. Mt. Hawley further argues that even though the evacuation order imposed a "mandatory evacuation" for the Parish, it also established a "daily curfew . . . prohibiting all individuals from leaving their residences between the hours of 7:00 p.m. and 6:00 a.m. . . ."[19] In other words, Mt. Hawley argues that the Orders do not trigger coverage because neither Order completely prohibited access to the insured premises as required by the Policy's terms. Consequently, Mt. Hawley argues that the Lab has failed to allege that access to the property was completely prohibited by an action of Civil Authority.

To support its arguments that the Orders must completely prohibit access, Mt. Hawley relies on *Pierre v. Transp. Ins. Co.*, 2021 WL 1709380, at *4 (W.D. La. Apr. 29, 2021) ("The Fifth Circuit has held that the critical word is 'prohibit[,]' which means 'to forbid access by authority or command.' . . . the Clause required complete prohibition of access." (quoting *730 Bienville Partners, Ltd. v. Assurance Co. of Am.,* 2003 WL 21145725 at *2 (5th Cir. 2003)) (internal citations omitted); *Kean, Miller,* 2007 WL 2489711, at *4, ("'Prohibited,' as explained in *Southern Hospitality* means more than mere hampering or limitation, it means to 'formally forbid' or 'prevent.'") (citing *Southern Hospitality, Inc. v. Zurich American Ins.,* 393 F.3d 1137 (10th Cir. 2004)).

The First Amended and Restated Complaint alleges that "[a]s a result of Hurricane Laura, and [sic] the Parish issued Executive Order 2020-01 through 2020-07 and the Mayor of Lake Charles issued relevant Executive Orders 2020-01 through 2020-07.[20] "The orders

---

[19] Defendant's exhibit 2.
[20] Id

prohibiting access to The Path Lab Premises include Parish Executive Orders 2020-01 through 2020-06, city Orders 2020-01 through 2020-07 and President Trump's disaster Declaration . . . ."[21] "The Orders were caused by and cite as their inducement direct physical loss of and damage to property caused by Hurricane Laura other than at The Lab Premises, but including areas within a mile thereof."[22]

The Lab argues that there is a direct nexus between the Orders and denial of access to the facility. Specifically, due to the Business Closure Order, clients could not access the Lab. Consequently, the Lab asserts that this prohibited access resulted in the insured's Business Income loss. The Lab relies on the language in the Orders that "Hurricane Laura devastated the City,"[23] the "extensive physical damage to all areas of the City,"[24] and to "surrounding areas," citing "damage associated with Hurricane Laura."[25]

The Lab states that the definition in Black's Law Dictionary (11th Ed. 2019) defines "prohibit" as (1) to forbid by law, (2) to prevent, precluded, or severely hinder, and the combined effect of the Orders was if not to deny access absolutely, but to "severely hinder" (i.e. prohibit) access of clients, employees, and physicians to the Lab.

To buttress its position, the Lab relies on the "Reasonable Expectation" doctrine which states that an [a]mbiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Breland v. Schilling,* 550 So.2d 609, 610-11 (La. 1989). "The test for construing an insurance policy is not what the insurer intended the words to mean, but how the words would have been

---

[21] Id. ¶ 17.
[22] Id. ¶ 23.
[23] Id. ¶¶ 8-15, Defendant's exhibit 3, August 28, 2020 City Order p. 4, Doc. 10-4.
[24] First Amended and Restated Complaint, ¶¶ 8-17, Doc. 13; September 4, 2020 Order, p. 6, Doc. 10-4.
[25] Id.

understood by a reasonable person in the shoes of the insured." *Dawson Farms, LLC v. Millers Mutual Fire Ins. Co.,* 794 So.2d 949, 951 (La. App. 2 Cir. 8/1/01).

The Lab argues that Mt. Hawley's assertion that the policy provision is unambiguous, is incorrect, considering that Mt. Hawley initially conceded that its policy afforded coverage after the Lab sent it the Business Closure Order;[26] furthermore, after the lawsuit was filed, the Lab continued to request financial information necessary to determine the loss and pay the claim.[27] The Lab notes that the same adjuster sent the declination letter, the concession email and the request for financial information.[28] The Lab argues that Mt. Hawley's coverage concession evidences both ambiguity in the policy and that the expectation of the Lab was reasonable. See *Avis v. Anderson,* 649 So.2d 1089 (La.App. 4 Cir. 1/19/95).

The Lab further argues that the cases cited by Mt. Hawley are distinguishable. Here, there was both a mandatory Evacuation Order and Business Closure Orders. Furthermore, Mt. Hawley conceded coverage when presented with the Business Closure Order, and even after suit was filed, Mt. Hawley continued to seek financial information as to the Lab's business income losses.

Mt. Hawley challenges the Lab's position that its facility was completely inaccessible, considering that the Lab admits that its employees continued to access the property and perform pathology services during the purported "period of closure," which Mt. Hawley suggests supports dismissal of the Lab's claims. Mt. Hawley relies on the following paragraph in *Kean Miller*:

---

[26] Original Petition, ¶ 26, Doc. 1; Restated Complaint ¶ ¶ 62, 63, Doc. 13.
[27] Id.
[28] Id.

> Nevertheless, even if unfortunate, the Court is required to follow Louisiana law on the interpretation of contracts and to consider the strongly persuasive jurisprudence before it. The unambiguous language of the contract requires that access to the insured premises be "prohibited" by civil authority. "Prohibited," as explained in *Southern Hospitality* means more than mere hampering or limitation, it means to "formally forbid" or "prevent." *Southern Hospitality,* at 1140, quoting Oxford American Dictionary and Language Guide 795 (1999). "Access" means "a way of approaching or reaching or entering." *Id.* In light of the evidence presented, the Court cannot find that the civil authorities formally forbade or prevented Kean Miller employees from approaching, reaching, or entering its business premises on August 29, 2005. There is no evidence of road blocks or street closures preventing access to Kean Miller's building; yet, there is evidence that two of Kean Miller' employees were able to enter the business premises on the very day for which Kean Miller claims business income losses. Under the circumstances, there does not appear to be a "direct nexus" between the civil authorities' advisories and access to Kean Miller's premises.  Accordingly, National Fire's motion for summary judgment should be granted, dismissing Kean Miller's claim because its business losses are not covered under the Civil Authority Clause.

*Id.* (citing *Southern Hospitality, Inc. v. Zurich American Ins.,* 393 F.3d 1137 (10th Cir. 2004)). Mt. Hawley argues that because several physicians and employees accessed the Lab facility to examine samples required by exigent medical circumstances, the Lab was not completely closed, whereas the Lab argues that these employees and physicians accessed the Lab despite of, and in violation of the Orders.  The Lab contends that this limited access should not negate coverage noting that the Policy specifically covers a "slowdown"[29] and penalizes an insured for failing to use "undamaged property . . . at the described premises" to resume operations.[30]

The Court agrees with the Lab, that the continuing Evacuation Order and the Business Closure Orders completely prohibited access to the Lab.  Indeed, as of August 27, 2021, the City of Lake Charles was devastated; the electrical transmission line

---

[29] Restated Complaint, ¶ ¶ 2, 7; Defendant's exhibit 1, p. 33, § F(6), Doc. 10-2.
[30] Id. p. 29, § C(3)(c)(1).

corridors were severely damaged, there was no water, and most roads were obstructed due to downed power lines. Unlike in *Kean, Miller,* decided on a mere recommendation to evacuate, in this case there was both a mandatory Evacuation Order, and Business Closure Orders due to the devastation caused by Hurricane Laura. This Court will not punish the Lab for violating these Orders to examine samples required by exigent medical circumstances, nor does the Court find this even relevant to the enquiry as to whether or not the continuing mandatory Evacuation Order and the Business Closure Orders prohibited access to the Lab.

## **CONCLUSION**

Because the Court finds that the Pathology Laboratory, Inc. sufficiently alleged that by Civil Authority, the mandatory Evacuation Order issued August 25, 2020 by the Calcasieu Parish Police Jury, as well as the Business Closure Orders issued by the Mayor of Lake Charles, (initially issued September 4, 2020) prohibited access to the Pathology Laboratory facility; due to the orders and the severe damage caused by Hurricane Laura, the Motion to dismiss filed by Mt. Hawley Insurance Company will be denied.

**THUS DONE AND SIGNED** in Chambers on this 3rd day of August, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**